**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| SABINA SOCORRO SANCHEZ, | ) | No. CV 17-2381-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 28, 2017, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB").  The parties filed Consents to proceed before a Magistrate Judge on April 19, 2017, and March 1, 2018.  Pursuant to the Court's Order, the parties filed a Joint Statement (alternatively "JS") on November 16, 2017, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Statement under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 30, 1954. [Administrative Record ("AR") at 150.] She has past relevant work experience as an accounting clerk. [AR at 20, 60.]

On June 21, 2013, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since January 15, 2012. [AR at 12, 150-51.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 12, 107-08.] A hearing was held on August 19, 2015, at which time plaintiff appeared represented by an attorney, and testified on her own behalf with the assistance of an interpreter. [AR at 26-64.] A vocational expert ("VE") also testified. [AR at 60-64.] On September 10, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from January 15, 2012, the alleged onset date, through September 10, 2015, the date of the decision. [AR at 12-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 7-8.] When the Appeals Council denied plaintiff's request for review on March 9, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider

the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

1  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart

2  P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the

3  claimant's impairment or combination of impairments does not meet or equal an impairment in the

4  Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

5  "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the

6  claim is denied. Id. The claimant has the burden of proving that she is unable to perform past

7  relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets

8  this burden, a prima facie case of disability is established. Id. The Commissioner then bears

9  the burden of establishing that the claimant is not disabled, because she can perform other

10  substantial gainful work available in the national economy. Id. The determination of this issue

11  comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920;

12  Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

13

14  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

15  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

16  January 15, 2012, the alleged onset date.[1] [AR at 14.] At step two, the ALJ concluded that

17  plaintiff has the severe impairments of cervical and lumbar degenerative disc disease and lateral

18  epicondylitis bilaterally. [Id.] He determined -- despite some "recent conflicting opinion evidence"

19  -- that the longitudinal record demonstrated that plaintiff's mental impairments, including affective

20  and anxiety-related disorders, were non-severe. [AR at 15.] At step three, the ALJ determined

21  that plaintiff does not have an impairment or a combination of impairments that meets or medically

22  equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the

23  residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b),[3]

24  _____

25  [1]    The ALJ concluded that plaintiff met the insured status requirements of the Social
Security Act through December 31, 2015. [AR at 14.]

26  [2]    RFC is what a claimant can still do despite existing exertional and nonexertional
27  limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
28                                                                                    (continued...)

4

except that she "can frequently (but not constantly) perform bending, stooping, and crouching; and frequently (but not constantly) perform feeling, fingering, grasping and overhead reaching bilaterally." [AR at 16.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as an accounting clerk. [AR at 20, 60-61.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 15, 2012, through September 10, 2015, the date of the decision. [AR at 21.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) rejected the opinions of plaintiff's treating physicians, Basem Fanous, M.D., and Silvio A. Del Castillo, D.O., regarding plaintiff's physical limitations; (2) determined that plaintiff does not have a "severe" mental impairment; (3) rejected plaintiff's subjective symptom testimony; and (4) found that plaintiff can perform her past relevant work. [JS at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.    PHYSICAL IMPAIRMENTS

Plaintiff contends that the ALJ improperly rejected the opinions of plaintiff's treating physicians concerning her physical limitations. [JS at 11.] She argues that instead of giving extra

---

[2](...continued)
the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

weight to the opinions of Dr. Fanous and Dr. Del Castillo as treating physicians, the ALJ rejected their opinions for reasons that were not legally sufficient or supported by substantial evidence. [JS at 13-14.]

### 1. Legal Standard

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[4] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and

---

[4]     The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528

F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it

according to factors such as the nature, extent, and length of the physician-patient working

relationship, the frequency of examinations, whether the physician's opinion is supported by and

consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see

20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th

Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the

[treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician or a treating

physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians,

psychologists, and other medical specialists who are also experts in Social Security disability

evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v.

Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the

DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating

doctor's testimony regarding the claimant's functional limitations). Reports of non-examining

medical experts "may serve as substantial evidence when they are supported by other evidence

in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).


### 2. The Opinions of Dr. Fanous and Dr. Del Castillo

On September 12, 2013, Dr. Fanous, plaintiff's treating physician at Sylmar Medical Center

since May 2013, provided a medical source statement in which he reported plaintiff's diagnoses

of low back pain radiating to the right leg; chronic neck pain with right, upper extremity

radiculopathy; and bilateral carpal tunnel syndrome. [JS at 11-12 (citing AR at 642-45).] He

stated that her symptoms included continuous pain in the lower back and right side of her neck,

which radiates to her right leg and right arm; and pain, weakness, and numbness of her hands.

[AR at 642.]  Dr. Fanous reported that the "clinical findings and objective signs" supporting plaintiff's symptoms included tenderness of the lower lumbar spine and the cervical spine, with spasm, decreased range of motion of the back and neck, and weakness of the right and left hands.  [Id.]  He opined that plaintiff was able to lift and/or carry ten pounds occasionally, and less than ten pounds frequently; stand and/or walk about two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; she would need to change position from sitting, standing, or walking to relieve her pain; would need to take unscheduled breaks for fifteen minutes, every two hours; was limited in pushing or pulling with her right upper and lower extremities; could never bend or climb; could occasionally crouch, balance, kneel, and crawl; her ability to reach, handle and finger is limited to occasionally by her right arm pain, and fingering is limited by her carpal tunnel syndrome.  [AR at 643-44.]  He deemed her prognosis to be "guarded" and stated that she would be absent from work more than three times a month.  [AR at 642, 643.]

On June 25, 2015, Dr. Del Castillo, plaintiff's treating physician at Lakeside Community Healthcare since June 2014, provided a Physical Residual Functional Capacity Questionnaire, in which he indicated plaintiff's diagnoses of chronic low back pain with right radiculopathy; and chronic neck pain causing right arm neuropathy.  [AR at 715-18.]  He stated that her symptoms included "constant intractable low back pain & neck pain," and radiculopathy down her right leg and arm.  [AR at 715.]  Dr. Del Castillo also stated that the "clinical findings and objective signs" supporting plaintiff's symptoms included spot tenderness on cervical tender points; and C3-S1, paraspinal, and lumbar spasms.  [Id.]  He opined that plaintiff was able to lift and/or carry ten pounds occasionally, and less than ten pounds frequently; stand and/or walk about two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; she would need frequent standing breaks; she was limited in pushing and/or pulling with her upper extremities; could never bend, climb, crouch, kneel or crawl; could occasionally balance; and could occasionally reach, handle, or finger due to the pain in her hand with these movements.  [AR at 716-17.]  He deemed her prognosis to be "guarded" and stated that she would be absent from work more than three times a month.  [AR at 715, 716.]

### 3. The ALJ's Findings

The ALJ found the medical basis for Dr. Fanous's September 2013 opinion to be "questionable" and gave the opinion "little weight." [AR at 19.] He stated that Dr. Fanous found plaintiff more limited than the RFC determined by the ALJ, and that the opinion was "not well supported or consistent with the record as a whole." [Id.] He also stated that "Dr. Fanous's own treatment records, upon which his opinion purports to be based, reflect normal examination findings." [Id.] In connection with an earlier discussion in his decision in which he noted that plaintiff "did not exhibit any clinical indication of a disabling physical or mental condition when she resumed treatment with [Dr. Fanous]," the ALJ referred to two of Dr. Fanous's treatment records to support that proposition: (1) a May 30, 2013, treatment note [AR at 599-603] that, according to the ALJ, reflects that plaintiff "complained of back pain and depression, but . . . exhibited a normal gait and an entirely normal mental status" [JS at 19 (citing AR at 601-02)]; and (2) a July 2013 treatment note [AR at 595-98] that the ALJ stated "revealed normal physical findings and normal psychiatric findings." [JS at 19 (citing AR at 597).] In rejecting Dr. Fanous's opinion, the ALJ also found it "worth noting" that Dr. Fanous acknowledged in March 2014 that plaintiff "would need to undergo additional testing, i.e., MRIs of her cervical and lumbar spine, for further evaluation." [Id. (citing AR at 646-48).]

The ALJ gave Dr. Del Castillo's opinion "little weight for essentially the same reasons" he gave Dr. Fanous's opinion "little weight." [AR at 19.] He "emphasized" that the medical records "show no objective evidence of radiculopathy or neuropathy," or support for any of Dr. Del Castillo's other assessed limitations. [Id.] Additionally, he noted that a September 2014 MRI of plaintiff's lumbar spine "revealed only 'minimal' grade I anterolisthesis at L4-L5 with 'no significant central canal or neural foraminal stenosis.'" [Id. (emphasis in original) (citing AR at 709).] The ALJ also observed that a September 2014 MRI of plaintiff's cervical spine "revealed diffuse annular bulging with mild to moderate neural foraminal narrowing, but no evidence of cord indentation or exiting nerve root impingement." [Id. (citing AR at 710).] The ALJ determined that Dr. Del Castillo's reported findings since June 2014 were "essentially unremarkable": for instance, he described plaintiff's physical examination results in August 2014 as "entirely 'normal'" [id. (citing

AR at 698)]; he noted that in October and November 2014 Dr. Del Castillo "noted no abnormalities" [id. (citing AR at 688-89, 693-94)]; and, although the ALJ acknowledged that in February 2015 Dr. Del Castillo noted "multiple complaints," the ALJ also remarked that plaintiff's physical and mental status examinations at that visit "were entirely within normal limits." [Id. (citing AR at 683).] The ALJ further observed that Dr. Del Castillo "raised questions about the veracity of [plaintiff's] subjective complaints at that time, noting that 'when one [complaint] is disproved, she seems[s] to suddenly appear to be suffering from a different ailment.'" [AR at 19-20 (citing AR at 684).] The ALJ concluded that "as with Dr. Fanous's earlier opinion, the medical basis for Dr. Del Castillo's June 2015 opinion is questionable." [AR at 20.]

### 4.    The Parties' Contentions

Plaintiff contends that the ALJ's reasons for rejecting the opinions of Dr. Fanous and Dr. Del Castillo -- i.e., that their opinions were not supported by the objective medical evidence or their own treatment notes -- fail because their examinations actually were based on clinical findings of tenderness, muscle spasm, and limited range of motion of the cervical and lumbar spine, and weakness of plaintiff's hands. [JS at 14 (citing AR at 642, 715).] She also points out that the MRIs of her cervical and lumbar spine taken in September 2015 "revealed various multiple disc bulges and anteroli[s]thesis at various levels and other abnormalities." [Id. (citing AR at 709-11).] She argues that the ALJ improperly relied only on the lack of objective medical evidence to reject these doctors' opinions, as case authority provides that "there is no statutory requirement that an impairment be proved by 'objective' testing." [Id. (quoting Shore v. Callahan, 977 F. Supp. 1075, 1079 (D. Or. 1997) (internal quotation marks omitted)).]

Plaintiff also submits that the "significant weight" given to the September 2013 opinion of consultative examiner Jay Dhiman, M.D., and to the opinions of the non-examining State agency medical consultants who accepted Dr. Dhiman's opinion that plaintiff could perform medium-level work, was not itself a legally sufficient reason to reject the opinions of the treating physicians -- it merely triggered the ALJ's duty to provide specific and legitimate reasons to reject the treating physicians' opinions. [JS at 14-15 (citing AR at 18, 65-77, 79-90, 614-20).] Additionally, although

the ALJ gave the opinions of Dr. Dhiman and the State agency consultants "significant weight," he nevertheless rejected these physicians' opinions that plaintiff could perform medium work and, in light of plaintiff's "persistent complaints of pain," limited her instead to light work.  [JS at 15 (citing AR at 18); AR at 20.]

Defendant responds that an ALJ "must give *good reasons* for the weight that he assigns to a treating source opinion,"[5] and that the ALJ did so here.  [JS at 15-16 (emphasis added) (citing 20 C.F.R. 404.1527(c)(2)).]  Defendant submits that in addition to the two records mentioned by the ALJ, additional 2013 treatment records from Dr. Fanous provide evidence that supports the ALJ's finding that Dr. Fanous's examination findings were "mostly normal."  [JS at 16 (citing AR at 19, 599, 602, 630, 634).]  Defendant also notes that Dr. Del Castillo's "checkbox opinion" "ran counter to his own treatment notes, which showed mostly unremarkable findings."  [JS at 18-19 (citing AR at 19-20, 716-17).]  For instance, defendant observes that from May 2014 to May 2015, Dr. Del Castillo's "examination[s] of Plaintiff's musculoskeletal system and extremities were completely normal."  (JS at 19 (citing AR at 679, 683, 688-89, 693-94, 698, 702, 706, 707).]  Defendant also suggests that the ALJ properly rejected the opinions of Dr. Fanous and Dr. Del Castillo because they were contradicted by the clinical findings, and were in disagreement with other doctors' treatment notes and examinations.  [JS at 17 (citing AR at 509, 614, 618-19, 669, 672, 674, 709, 710).]

5. **Analysis**

Here, the ALJ rejected Dr. Fanous's May 30, 2013, opinion regarding plaintiff's physical limitations on the basis that it was inconsistent with the medical record as a whole and with Dr. Fanous's treatment notes, including, among other things, Dr. Fanous's finding that plaintiff

_____

[5]   Defendant relies on the standard set forth in 20 C.F.R. § 404.1527(c)(2), which provides that the Agency "will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."  However, when rejecting or discounting the opinion of a treating physician, the law in this Circuit requires an ALJ to articulate clear and convincing reasons (where the opinion is not contradicted by another doctor) or specific and legitimate reasons (where the opinion is contradicted by another doctor).  Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

exhibited a normal gait.  Inconsistency with the medical record as a whole constitutes a legitimate reason for discounting a physician's opinion.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999).  However, to reject an opinion as inconsistent with the treatment notes or medical record, the "ALJ must do more than offer his conclusions." Embrey, 849 F.2d at 421.  As the Ninth Circuit explained:  "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." Id., 849 F.2d at 421-22.

In fact, a review of the May 30, 2013, treatment note in its entirety clearly reflects that plaintiff presented with worsening, recurring headaches, that affect her neck, and persistent lower back pain aggravated by bending and walking.  [AR at 599.]  Dr. Fanous further noted that plaintiff was positive for back, joint, and neck pain, and exhibited a tender lower cervical spine with moderate pain on motion, and lumbar-sacral tenderness with moderate pain with motion.[6]  [AR at 602.]  These findings would appear to be *consistent* with Dr. Fanous's opinion regarding plaintiff's physical limitations, notwithstanding plaintiff's otherwise "normal gait" -- which Dr. Fanous himself did not in any way imply was inconsistent with plaintiff's complaints or impairments. Similarly, in his July 2013 treatment note, Dr. Fanous stated that plaintiff presented with a complaint of continual insomnia; she was positive for depression; had difficulty maintaining sleep; was experiencing numbness in her extremities; and was positive for back, joint, and neck pain. [AR at 595-98.]  While true that these treatment notes also reflect a number of "normal" findings (such as those related to plaintiff's respiratory, cardiovascular, gastrointestinal, and metabolic systems), they also clearly reflect plaintiff's continuing complaints of back and neck pain, headaches, and insomnia.  [Id.]

---

[6]     Dr. Fanous also noted plaintiff's Fibromyalgia Tender Point Calculation to be 14 (out of a total of 18 tender points).  [AR at 602.]  He further stated that plaintiff was positive for anxiety, depression, headache, marked diminished interest or pleasure, numbness in her extremities, and suffered from moderate depression that was sub-optimally controlled.  [AR at 601-03.]  On November 7, 2014, Dr. Del. Castillo indicated that plaintiff was being worked up for fibromyalgia [AR at 657], and on November 21, 2014, he noted she was positive for myalgias.  [AR at 688.]

Additionally, although the ALJ found Dr. Fanous's July 2013 statements that plaintiff would need to undergo cervical and lumbar MRI's for further evaluation "worth noting," he did not in any way provide an explanation for what exactly it was that he found "noteworthy" about these statements. In fact, what *is* "worth noting" after reviewing the record, are Dr. Fanous's *complete* statements -- "[Plaintiff] was informed that she would need MRI[s] of the C-spine [and L/S-spine] for further evaluation *before referring her to pain management*." [AR at 647 (emphasis added).] Thus, the ALJ's implication that Dr. Fanous believed further testing was necessary for some reason *other than* to obtain authorization for plaintiff to see a pain management specialist, was unwarranted and unsupported.

The Court finds that the ALJ's reason for rejecting Dr. Fanous's opinion was not specific and legitimate and/or not supported by substantial evidence. Remand is warranted on this issue.

For "essentially the same reasons" that the ALJ's reason for rejecting Dr. Fanous's opinion was not specific and legitimate or supported by substantial evidence, the same is true with respect to his rejection of Dr. Del Castillo's opinion. Although the ALJ states that the medical records "show no objective evidence of radiculopathy or neuropathy," the ALJ "must do more than offer his conclusions." Embrey, 849 F.2d at 421. Thus, the ALJ's statements that there is no "objective evidence" of radiculopathy or neuropathy, or that the September 2014 MRI results were somehow inconsistent with Dr. Del Castillo's June 2015 opinion, were not supported by substantial evidence. Additionally, although Dr. Del Castillo continued to treat plaintiff after the September 2014 MRIs, he never questioned her symptoms in light of the MRI findings. As such, the ALJ's statements suggesting a link between the MRI findings and the weight to be given Dr. Del Castillo's opinion are conclusory and speculative.

Furthermore, the treatment records noted by the ALJ do not reflect only "normal" findings. For instance, the June 2014 treatment record that the ALJ found to reflect "entirely normal results," also reflects that plaintiff was positive for back pain and bone/joint symptoms, and that Dr. Del. Castillo issued an order for MRIs of plaintiff's lumbar and cervical spines at that visit. [AR at 698.] In his October and November 2014 treatment notes that according to the ALJ reflected "no abnormalities," Dr. Del Castillo also noted his assessments of sciatica, chronic, and fibromyalgia,

chronic, not receptive to Cymbalta, and indicated that he planned to refer plaintiff to a rheumatologist. [AR at 689, 690.] Similarly, defendant's suggestion that between May 2014 and May 2015 Dr. Del Castillo's "examination[s] of Plaintiff's musculoskeletal system and extremities were completely normal," appears to be based on Dr. Del Castillo's reports of his *visual* observations of plaintiff's extremities, and not any specific testing. [AR at 679 ("Visual overview of all four extremities is normal"), 683 (same), 688 (same), 694 (same), 698 ("Overview - Normal"), 702 (same), 707 (same).] Finally, the treatment record acknowledged by the ALJ to reflect "multiple complaints," but which the ALJ suggested also reflected that plaintiff's physical and mental status examinations "were entirely within normal limits,"[7] also reflects that due to chronic throat pain, Dr. Del Castillo planned to order a thyroid ultrasound. [AR at 683, 684.]

Even Dr. Del Castillo's February 5, 2015, statement that "when one [complaint] is disproved [plaintiff] seem[s] to suddenly be suffering from a differ[ent] ailment," was taken out of context, and this conclusion does not necessarily follow from Dr. Del Castillo's treatment record. [AR at 19-20 (citing AR at 684).] Instead, read in full, Dr. Del Castillo appears to have been suggesting there may also be a psychiatric component to plaintiff's complaints of chronic pain: "? somatization disorder vs Hypochondriasis; multiple medical complaints, when one is disproved she seem[s] to suddenly appear to be suffering from a different ailment." [AR at 684.] He otherwise did not state that plaintiff was not being truthful about the pain itself, or suggest that she was a malingerer, for instance. Moreover, when he treated her again in May 2015, Dr. Del Castillo assessed a herniated cervical disc, symptomatic; provided a referral to physical therapy; considered an epidural; and also considered treatment for carpal tunnel ("CT TS"). [AR at 679.] In short, Dr. Del Castillo did not dismiss or otherwise discount plaintiff's complaints of pain on this -- or any other -- basis. [AR at 679.]

The Court finds that the ALJ's reason for rejecting Dr. Del Castillo's opinion was not specific

---

[7] The physical and mental status examinations on that date consisted of what appears to be a cursory "inspection" or "overview" of the following: constitution, eyes, ears, nasopharynx, respiratory system, skin, musculoskeletal system ("[v]isual overview of all four extremities is normal"), extremities, memory ("Normal"), and orientation ("Oriented as to time, place, person & situation"). [AR at 683.]

and legitimate and/or not supported by substantial evidence.  Remand is warranted on this issue.

B.    **MENTAL HEALTH IMPAIRMENTS**

Plaintiff contends that the ALJ's determination that plaintiff's affective and anxiety-related disorders were non-severe was not supported by substantial evidence in the record.  [JS at 3.]

Specifically, plaintiff notes that her primary care physicians at Sylmar Medical Center between May 2013 and March 2014 (including Dr. Fanous and Robert Titcher, M.D.) reported that plaintiff had "anxiety with symptoms of 'anxious/fearful thoughts, difficulty concentrating, difficulty falling asleep, easily startled and excessive worry,' 'depression and difficulty maintaining sleep,' 'increased fatigue,' '[and] poor or worsening memory.'"  [JS at 4 (citing AR at 595, 624, 632).]  She further notes that in May 2014, her primary care physician at Lakeside Community Healthcare assessed her with "Anxiety, Chronic," and "Major depression, recurrent, Chronic," and made a psychiatric referral.  [JS at 4; AR at 707 (citations omitted).]  Additionally, since September 2014, plaintiff's neurologist, Ronnie Karayan, M.D., treated plaintiff for chronic headaches and included comments in his diagnostic assessments such as:  "Anxiety/panic disorder," and "Memory loss.  Consider 'pseudodementia' from depression/anxiety."  [Id. (citing AR at 668-75).]  Plaintiff asserts that the ALJ's reliance on the opinion of the examining psychiatrist, William Goldsmith, M.D., who evaluated plaintiff in September 2013 and found her "only 'slightly' limited, if at all, in the ability to perform mental work activities," was error because it was based "on a snapshot of Plaintiff's overall mental functioning *two years* prior to the ALJ's decision [and] in and of itself did not constitute a legally sufficient reason for rejecting the opinion" of David Estrada, M.D., plaintiff's treating psychiatrist at M.C.L.A. Psychiatric Medical Group, "based on his regular examinations and treatment of Plaintiff over a period of a year."  [JS at 6.]  Similarly, plaintiff contends that the non-examining State agency consultants -- who also determined in October 2013 and January 2014 that plaintiff's mental impairments were non-severe -- based their opinions upon a review of an incomplete medical record.  [Id. (citing AR at 15, 65-77, 79-90).]

In June 2014, plaintiff began treating with Dr. Estrada.  [AR at 649-66.]  In his initial psychiatric evaluation on June 11, 2014, Dr. Estrada diagnosed plaintiff with post-traumatic stress

disorder ("PTSD"). [AR at 666.] Plaintiff received supportive therapy and "various medications including Celexa, Lorazepam, Lyrica, Gabapentin, Abilify, Adderall, Ambien, and Cymbalta." [JS at 5 (citing AR at 649-66).] Dr. Estrada provided a medical source statement on June 12, 2015, in which he reported that plaintiff's symptoms of anxiety and depression are persistent and have been "refractory to treatment thus far." [AR at 712.] Dr. Estrada found that plaintiff would have marked limitations understanding, remembering, and carrying out short, simple instructions; carrying out detailed instructions; making judgments on simple work-related decisions; and interacting appropriately with supervisors and co-workers. [AR at 712-13.] He further found extreme limitations in understanding and remembering detailed instructions, and responding appropriately to work pressure and changes in a routine work setting. [Id.] He observed that plaintiff's limitations are supported by the fact that she has difficulty "coping due to anxiety," and "memory impairment due to mood symptoms." [AR at 713.]

The ALJ gave "little weight" to Dr. Estrada's June 12, 2015, opinion. [AR at 20.] He noted that Dr. Estrada's treatment records reflect neither "supportive mental status abnormalities, nor evidence of 'persistent severe anxiety and depression,'" as indicated by Dr. Estrada. [Id.] He also observed that when Dr. Estrada first saw plaintiff on June 11, 2014, he indicated that her mental status examination was "mostly within normal limits, including 'intact' or 'normal' thought processes, thought content, memory and judgment." [Id. (citing AR at 666).] He further noted that Dr. Estrada's August 13, 2014, treatment note reflected that plaintiff "had been tolerating well and benefitting from Adderall with improved energy and focus." [Id. (citing AR at 661).] The ALJ also referred to the following notes: (1) a September 12, 2014, note that reflected "additional improvement in [plaintiff's] reported depressive symptoms on Celexa"; (2) a November 7, 2014, note which purportedly reflected that plaintiff's "mental status examination was *entirely* within normal limits"; and (3) an April 10, 2015, treatment note reflecting that plaintiff "was still feeling better," and "no mental status deficits." [AR at 20 (citing AR at 659, 657 (emphasis added), 649, respectively).]

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d

1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). As the Ninth Circuit recently explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017 (citing Holohan, 246 F.3d at 1205); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . . Those [treatment] notes show that although [plaintiff] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

In this case, as was true of the ALJ's summary of plaintiff's physical examination records, the ALJ's summary of plaintiff's mental health records and his finding that plaintiff's mental health impairment is non-severe, reflect only carefully selected portions of Dr. Estrada's findings -- those that support the ALJ's findings. For instance, the August 13, 2014, treatment note allegedly reflecting improved energy and focus due to Adderall also reflected that plaintiff still was experiencing crying spells, and "feeling down" and "withdrawn." [AR at 661.] The September 12, 2014, note allegedly reflecting improved depressive symptoms on Celexa also reflected panic attacks and sleep disturbance, as well as plaintiff's report that she felt too "hyper" on the current dosage of Adderall, and Dr. Estrada's recommendation that due to plaintiff's long history of headaches that may be migraine headaches, plaintiff should follow up with a neurologist. [AR at

659.] The November 7, 2014, note allegedly reflecting a mental status examination "entirely within normal limits," also reflected irritability, and a work up for fibromyalgia. [AR at 657.] Finally, the April 10, 2015, treatment note purportedly reflecting that plaintiff was "still feeling better," and "no mental status deficits," nevertheless also reflected that plaintiff was still experiencing "some intermittent anxiety." [AR at 649.]

Plaintiff argues that the ALJ's error "was not inconsequential to the ALJ's ultimate nondisability determination," because if he had properly evaluated the evidence of plaintiff's mental impairments and included a limitation to simple repetitive tasks, which would preclude her performing her past skilled work, then plaintiff would have been found disabled. [JS at 10, 11 (citing AR at 60, 62).] That is because, according to plaintiff, with an RFC for light work as determined by the ALJ, along with plaintiff's advanced age, her educational and vocational background, *and* a limitation to simple, repetitive work, the VE testified that plaintiff would not be able to perform her past relevant skilled work as an accounting clerk and that there would be no transferable skills to other work. [JS at 9-10 (citing AR at 16, 60, 62; 20 C.F.R. pt. 404, subpt. P, app. 2).] The VE and the ALJ seemed to indicate that this result would direct a finding of disabled under Rule 201.06 of the Medical-Vocational Guidelines. [AR at 62.]

Based on the foregoing, the Court finds that the ALJ's reasons for finding plaintiff's mental impairments to be "non-severe" were not specific and legitimate and/or supported by substantial evidence. Remand is warranted on this issue.

## C. SUBJECTIVE SYMPTOM TESTIMONY

The ALJ discounted plaintiff's testimony for the following reasons: (1) plaintiff's testimony of disabling symptoms "was not substantiated by objective medical abnormalities" or "consistent with other longitudinal evidence of record" [JS at 21-22 (citing AR at 17)]; (2) plaintiff stopped working in August 2010 for non-medical reasons and alleged that she became unable to work in January 2012 for medical reasons [JS at 22 (citing AR at 17)]; (3) there was no evidence of treatment around the disability onset date in 2012, or for more than a year after the alleged onset date, and plaintiff has not participated in physical therapy or formal pain management [JS at 23

(citing AR at 18, 20)]; (4) plaintiff's symptoms were not especially severe or limiting because a November 2014 progress note indicated she had decided to take her pain medications every other day, and then stopped taking them [JS at 23-24 (citing AR at 20, 686)]; and (5) plaintiff's daily activities were inconsistent with her subjective symptom testimony. [JS at 24 (citing AR at 20, 42-43, 609).] Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 19.] She argues that the objective medical evidence was consistent with her subjective symptom complaints, as corroborated by the records of her treating physicians Dr. Fanous and Dr. Del Castillo, and by psychiatrist Dr. Estrada. [JS at 22.] She notes that although she stopped working in August 2010 for non-medical reasons, it was January 2012 when she became unable to work due to medical reasons,[8] and that at the time she was laid off, she already had pain in her neck for which she had received physical therapy and epidural injections; numbness in her hands for which she underwent testing and was being treated with medications, therapy and wrist braces; and she was receiving psychiatric care for anxiety. [JS at 22-23 (citing AR at 17, 42, 45-46, 47, 49-51, 56, 696).] She points out that although she had little treatment around the onset date, her "inability to pursue treatment was due to insurance and financial issues." [JS at 23 (citing AR at 51).] She observes that the ALJ's review of the progress note reflecting that plaintiff reduced and then stopped her pain medications, "selectively omitted that the same . . . progress note indicated that Plaintiff stopped her pain medications because she had 'mild relief of pain,' and her '[sy]mptoms are affecting activities of daily living."[9] [JS at 23-24 (citing AR at 20, 686).] Finally, she submits that her daily activities were very little, and often done with the help of others, and the ALJ "misstated and mischaracterized" her reported

---

[8]   The fact that plaintiff did not immediately apply for disability at the time she was laid off appears -- logically -- to be a reason to credit her subjective symptom testimony, not discount it.

[9]   That note states as follows: "decided to take [medication] every other day, then stopped last week. Did have mild relief of pain. Symptoms are affecting activities of daily living." [AR at 686.] Although the rest of that note does not provide a great deal of information regarding plaintiff's decision, there is a later notation that her fibromyalgia was "not receptive to Cymbalta" and a referral to rheumatology was initiated. [AR at 689.] Thus, this note may only be referring to plaintiff's decision to stop that one medication, which had been started one month earlier. [JS at 690.]

daily activities and did not elaborate on which activities undermined her allegations and/or reflected on her ability to perform work-related activities. [JS at 24.] Thus, plaintiff submits, the ALJ failed to provide specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony. [JS at 25.]

Defendant counters plaintiff's arguments by noting that (1) plaintiff was "laid off in August 2010 and remained unemployed, even though she did not claim that she was disabled until January 15, 2012"; (2) plaintiff's argument that she was receiving treatment for her carpal tunnel syndrome when she was laid off "is a red herring" because "she clearly testified that she stopped working because she was laid off, not because of these conditions"; (3) plaintiff's activities of daily living show that she was not as limited as she claimed; (4) plaintiff received "relatively conservative and minimal treatment" and no treatment around her alleged onset date or for a year thereafter; (5) plaintiff's argument regarding why she stopped taking her pain medication is "confusing at best" because "if Plaintiff's pain medications were providing relief and her pain symptoms were affecting her activities of daily living, it should follow that Plaintiff would continue to take her medication, not stop taking them completely"[10]; and (6) the objective medical evidence did not support plaintiff's subjective symptom testimony. [JS at 25-29 (citations omitted).]

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis."[11] Trevizo, 871 F.3d at 678 (citing Garrison,

---

[10]    This leads the Court to wonder if the note was intended to reflect that although plaintiff received some mild relief from her pain symptoms with the medication, it was the *side effects* of the medication, and not her continuing *symptoms*, that were affecting her activities of daily living. [See AR at 689.]

[11]    On March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The (continued...)

759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR [12] 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. During this inquiry, the ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1284). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Molina v. Astrue, 674 F.3d 1104,

---

[11](...continued)

focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit in Trevizo applied SSR 16-3p retroactively, noting that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

The ALJ's decision was issued before March 28, 2016, when SSR 16-3p became effective. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

[12]    "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1112 (9th Cir. 2012). Additionally, in assessing a plaintiff's subjective symptom testimony, the ALJ must acknowledge testimony that such activities were limited. Revels, 874 F.3d at 668 (ALJ failed to "meet the high bar for rejecting a claimant's symptom testimony," in part because he failed to acknowledge plaintiff's testimony that she could only do some tasks in a single day and regularly needed to take breaks, which was consistent with her testimony). Furthermore, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds." Trevizo, 871 F.3d at 681 (quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)).

Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, on remand the ALJ must also reconsider plaintiff's subjective symptom testimony and, based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony, if warranted. See Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

**D.     PAST RELEVANT WORK**

Plaintiff contends that the ALJ erred when he relied on the VE's response to the ALJ's hypothetical question "that did not include the work-related physical and mental limitations assessed by Plaintiff's treating physicians and psychiatrist, and testified to by Plaintiff." [JS at 29-30.]  That is, because the ALJ did not properly credit the medical opinions in the record, or plaintiff's testimony, his hypothetical to the VE did not adequately reflect all of plaintiff's physical and mental limitations, and his finding that she can perform her past relevant work as an accounting clerk was not, therefore, based on substantial evidence.  [JS at 30.]

Defendant contends that the ALJ properly rejected the physical and mental health limitations assessed by plaintiff's treating physicians, and her subjective symptom testimony and,

therefore, he properly excluded the assessed limitations from his hypothetical to the VE and there was no error.

Because the Court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject the opinions of plaintiff's treating providers, and the ALJ on remand will also reassess plaintiff's subjective symptom testimony, this issue will also need to be reassessed by the ALJ on remand.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. <u>Trevizo</u>, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Id.</u> (citing <u>Garrison</u>, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. <u>See</u> <u>Garrison</u>, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Fanous, Dr. Del Castillo, and Dr. Estrada, the ALJ on remand shall reassess the opinions of these treating providers. Second, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective symptom allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as an accounting clerk. If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step

1  five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if

2  necessary, whether there are jobs existing in significant numbers in the regional and national

3  economy that plaintiff can still perform.

4

5  **VII.**

6  **CONCLUSION**

7      **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the

8  decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further

9  proceedings consistent with this Memorandum Opinion.

10      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

11  Judgment herein on all parties or their counsel.

12      **This Memorandum Opinion and Order is not intended for publication, nor is it**

13  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

14

15  DATED:  March 13, 2018

16                                                      PAUL L. ABRAMS
                                                       UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28